UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SYED BOKHARI, METRO LIVERY, INC., RICHARD SIMPKINS, and ALLEN VANPLIET, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:11-00088 ) Judge Sharp |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM**

This litigation challenges Metropolitan Government of Nashville and Davidson County ("Metro") Ordinance No. BL2010-685 which imposes new restrictions and regulations on motorized, non-taxi passenger vehicles for hire. Metro has filed a Motion to Dismiss (Docket No. 43) the substantive due process claim as set forth in the "First Cause of Action" in Plaintiffs' Amended Complaint.[1] That Motion will be denied.

**I. FACTUAL SYNOPSIS**

According to the allegations in the Amended Complaint, which the Court must accept as true for present purposes, the relevant facts are as follows:

Plaintiffs "are in the affordable limousine and sedan business." (Docket No. 29, Amended Complaint ¶ 3). Plaintiff Syed Bokhari is the sole shareholder of, and a driver for, Plaintiff Metro

---

[1] In the original Complaint, Plaintiffs also sued Brian McQuistion ("McQuistion") in his official capacity as the Director of Metro's Transportation and Licensing Commission. In the Amended Complaint, Plaintiffs dropped McQuistion from the lawsuit and, accordingly, Metro's Motion to Dismiss relating to McQuistion (Docket No. 12) will be denied as moot.

1

Livery, Inc., a limousine and sedan service. Plaintiff Richard Simpkins is the sole proprietor of A Limo For You, a now essentially defunct Nashville limousine service. Plaintiff Allen VanPliet is the sole proprietor of Southern Hospitality Limousine and operates the business from his home in Murfreesboro, Tennessee.

Collectively Plaintiffs challenge the Ordinance, alleging that the Metro Counsel "worked closely with expensive limousine services in order to eliminate the robust competition in Nashville's transportation market." (Id. ¶ 4). More specifically, they claim that, although Nashville had no regulation on limousine or sedan businesses prior to June 2010, Metro "adopted the regulations challenged in this lawsuit at the behest of the Tennessee Livery Association—a trade group comprised of high-end limousine companies," even going so far as to allow that trade group to "steer the actual content and wording" and "draft each of the[] provisions" of the Ordinance. (Id. ¶¶ 45, 51-52).

The Ordinance has four specific provisions which Plaintiffs find objectionable: the "minimum fare"; "prohibition on leasing"; "dispatch restriction"; and "vehicle age requirement" provision. The first three provisions became effective June 18, 2010, and the last provision became effective January 1, 2012.

The "minimum fare" provision requires that limousine and sedan service operators charge a minimum of $45.00 per trip. Plaintiffs find this objectionable because "minimum fares serve to artificially inflate the cost of limousine and sedan service in Nashville and Davidson County while doing nothing to increase the safety of that service and doing nothing to protect consumers." (Id. ¶ 57).

The "prohibition on leasing" provision requires that limousine and sedan service operators

2

hold title to their vehicles, thereby making leasing impossible. Plaintiffs assert this provision, too, does nothing to promote health, safety or consumer protection, and is contrary to the common practice "in the limousine and sedan industry" of leasing vehicles. (Id. ¶ 66).

The "dispatch restriction" requires that operators dispatch vehicles only from their place of business which Plaintiffs assert is another artificial restriction unrelated to the promotion of health, safety, or consumer protection. Instead, the "dispatch restriction" "makes one-man car service practically impossible because it requires vehicles to be dispatched from an approved place of business and prohibits vehicles from being dispatched remotely with, for example, a cellular telephone." (Id. ¶ 70). Moreover the "dispatch restriction" allegedly complicates passenger pre-arrangement, increases the amount of time customers must wait for service, and therefore destroys consumers' goodwill[.]" (Id. ¶ 71).

Finally, the "vehicle age requirement" requires that operators take all sedans and sport utility vehicles out of service if they are more than seven years old, take limousines out of service if they are more than ten years old, and refrain from placing any vehicle in service if it is more than five years old. Plaintiffs claim that "[a]ny legitimate vehicle-safety rationale for the vehicle-age requirement is rendered irrational by virtue of" the fact that the provision contains an exemption "for so-called 'classic or vintage' limousines and sedans" – vehicles that, by definition, have fewer safety features than newer (even seven or ten year old) vehicles. Moreover, Plaintiffs' contend the exemption for "classic and vintage" vehicles was included because some "high-end limousine companies" such as Matchless Limousine have such vehicle in their fleets, and it was those sorts of companies that "helped Defendant[] craft the vehicle-age restrictions. (Id. ¶¶ 77 & 78).

Plaintiffs allege that the above-referenced four provisions in the newly-enacted Ordinance

3

Case 3:11-cv-00088   Document 57   Filed 01/19/12   Page 3 of 7 PageID #: 263

"independently and as a whole, threaten to put Plaintiffs out of business," and "threaten to deprive Nashville's consumers of affordable limousine and sedan service altogether." (Id. ¶ 82). They bring claims under Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, claiming that the enactment of the Ordinance has deprived them of (1) substantive due process, (2) privileges and immunities of citizenship; and (3) equal protection of the law.

## II. STANDARD OF REVIEW

As a general rule, in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)).

A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and this entails showing "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949. Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

## III. LEGAL DISCUSSION

4

Plaintiffs allege that each of the four provisions in the Ordinance violate their right to substantive due process under the Fourteenth Amendment and 42 U.S.C. § 1983. Defendant argues that "because the 'threats' to Plaintiffs' business and economic liberty, as articulated by the Plaintiffs themselves, do not meet the rigorous requirement of 'shocking the conscience,' Plaintiffs substantive due process claims should be dismissed." (Docket No. 43 at 1).[2]

In its moving papers, Defendant cites Rochin v. California, 342 U.S. 165, 172 (1952) and LRL Properties v. Portage Metro. Hous. Auth., 55 F.3d 1097, 1111 (6th Cir. 1995) for the proposition that "[t]o claim a violation of substantive due process rights, a plaintiff must allege governmental action that amounts to an arbitrary infringement upon fundamental rights that are implicit in the concept of ordered liberty, or governmental action which can be said to 'shock the conscience.'" (Docket Entry No. 44 at 6). However, both cases preceded the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833 (1998).

"Lewis clarified that the shocks-the-conscience test, first articulated in Rochin, governs all substantive due process claims based on executive, as opposed to legislative, action." Martinez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010) (internal citation to Rochin and italics omitted). Thus, "the 'shocks the conscience' standard is not applicable to cases in which plaintiffs advance a substantive due process challenge to a *legislative* enactment." Dias v. City and Country of Denver, 567 F.3d 1169, 1182 (10th Cir. 2009) (italics in original). "Instead, it is an inquiry reserved for cases challenging executive action." Id. (italics in original) (citing, Lewis, 523 U.S. at 847-47 & n. 8);

---

[2] Defendant also argues that Plaintiff lacks standing to pursue their claims relating to the "vehicle age requirement" because that provision of the Ordinance had yet to become effective as of the time of filing of the Motion to Dismiss. However, during a telephone conference with the Court on January 17, 2012, Defendant conceded that its standing argument was rendered moot in light of the January 1, 2012 effective date of the "vehicle age requirement" provision.

5

see also, County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006) (citations omitted) ("typically, a legislative act will withstand a substantive due process challenge if the government 'identifies the legitimate state interest that the legislature could rationally conclude was served by the statute'" but, "non-legislative state action violates substantive due process if 'arbitrary, irrational, or tainted by improper motive,' or if 'so egregious that it shocks the conscience'").

Here the challenge is to Metro's enactment of an Ordinance. This, of course, is a legislative, as opposed to an executive action.

Defendant also cites a decades-old district court case involving the regulation of massage parlors for the proposition that "Plaintiff do not have a fundamental right to operate an unregulated livery business." (Docket No. 44 at 6, citing, Pentco, Inc. v. Moody, 474 F.Supp. 1001, 1003 (S.D. Ohio 1978)). This argument is misplaced because Plaintiffs are not claiming that they have a fundamental right to operate an unregulated business, and, in any event, economic regulations that do not interfere with the exercise of fundamental rights or rely upon inherently suspect classifications may be challenged under the due process clauses of the Fourteenth Amendment. See, City of New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976); Craigmiles v. Giles, 312 F.3d 220, 223-23 (6th Cir. 2002). That is, "[e]ven 'legislation that does not proscribe fundamental liberties nonetheless violates the Due Process Clause' where it imposes burdens without any 'rational basis' for doing so." Sheffield v. City of Fort Thomas, 620 F.3d 596, 613 (6th Cir. 2010) (quoting, United States v. Comstock, 130 S.Ct. 1949, 1966 (2010) (Kennedy J. concurring)).

In short, Plaintiffs are not required to allege that Metro's actions in enacting the Ordinance "shocks the conscience," nor are they required to show the denial of a fundamental right for purposes of their substantive due process claim. Instead, it is incumbent upon Plaintiffs merely to

state a plausible claim that they have been deprived of a protected liberty or property interest, and that no rational basis exist for the regulations in question. They have sufficiently done so by alleging that the new rules stemming from the Ordinance serve no legitimate public health or safety purpose, and by alleging that the Ordinance was enacted not to protect any such purpose, but rather to protect limousine companies and taxicab companies from competition. See, Craigmiles, 312 F.3d at 224 & 229 (noting that "[j]udicial invalidation of economic regulation under the Fourteenth Amendment has been rare in the modern era," but also noting that, for purposes of the equal protection clause and the due process clauses, "[c]ourts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose").

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss (Docket No. 43) will be denied. Defendant's Motion to Dismiss McQuistion as a Defendant (Docket No. 12) will be denied as moot.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE