UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SYED BOKHARI, METRO LIVERY, INC., RICHARD SIMPKINS, and ALLEN VANPLIET, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:11-00088 ) Judge Sharp |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

For yet a third time, this Court is called upon to issue a substantive ruling in relation to Plaintiffs' challenge to Metropolitan Government of Nashville and Davidson County ("Metro") Ordinance No. BL2010-685 (the "Ordinance"). In an Order and Memorandum entered January 19, 2012 (Docket Nos. 57 & 58), Bokhari v. Metropolitan Gov't of Nashville and Davidson County, 2012 WL 16372 (M.D. Tenn. Jan. 19, 2012), this Court denied Metro's Motion to Dismiss. On April 9, 2012, one week after holding a day-long evidentiary hearing, the Court entered an Order and 18 page Memorandum, Bokhari v. Metropolitan Gov't of Nashville and Davidson County, 2012 WL 1615907 (M.D. Tenn. April 9, 2012), denying Plaintiffs' Motion for Preliminary Injunction on the portion of the Ordinance that imposed a $45.00 minimum fare requirement.[1]

---

[1] Although this Court's decision denying Plaintiffs' requested preliminary injunction focused on the minimum fare requirement, that opinion provides an extensive background of the case as well as the governing law, and familiarity with the opinion is, therefore, assumed.

1

Metro now moves for summary judgment on all of Plaintiffs' challenges to the Ordinance, including not only the minimum fare requirement, but also the dispatch restrictions and the vehicle age requirements.[2] That Motion has been fully briefed by the parties (Docket Nos. 97, 104 & 106).

In support of its Motion for Summary Judgment, Metro has submitted its Concise Statement of Material Facts, consisting of 60 paragraphs. In response, Plaintiffs have set forth 109 additional paragraphs of facts which they contend are material.

Having fully considered the filings made by the parties, and recognizing that summary judgment is only inappropriate when there are "disputes over facts that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that all inferences from the record evidence are to be made in favor of the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the Court will deny Metro's Motion for Summary Judgment.

## I.

In denying Plaintiffs' preliminary injunction request, the Court found that rational basis review governed this action, and that the Sixth Circuit's decision Craigmiles v. Giles, 312 F.3d 220 (6th Cir. 2002) was controlling. The Court then observed that rational basis requires "'only that the regulation bear some rational relation to a legitimate state interest,'" and that

> [e]ven foolish and misdirected provisions are generally valid if subject only to rational basis review. As we have said, a statute is subject to a "strong presumption of validity" under rational basis review, and we will uphold it "if there is any

---

[2] Plaintiffs also challenged the requirement that livery companies hold both title and registration to their vehicles, making leasing impossible. However, the parties have entered into a stipulation and agreed order which allows livery companies to lease vehicles notwithstanding the Ordinance.

2

reasonably conceivable state of facts that could provide a rational basis." Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001). See also, Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Those seeking to invalidate a statute using rational basis review must "negative every conceivable basis that might support it." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Our standards for accepting a justification for the regulatory scheme are far from daunting. A proffered explanation for the statute need not be supported by an exquisite evidentiary record; rather we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data." FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Under rational basis review, it is "'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.'" Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (quoting, Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

Bokhari, 2012 WL 1165907 at *5 (quoting Craigmiles, 312 F.3d at 223-24).

Although critical of many of the reasons advanced by Metro for enactment of the Ordinance, the Court recognized that "what [it] may or may not think about the propriety of, or need for, a minimum fare is really of no moment," given the wide latitude legislative bodies are afforded in regulating their local economies. Id. at *7. Since Plaintiffs had failed to negate each and every supposed reason for enactment of the Ordinance advanced by Metro, the Court found, on the basis of the then-existing evidentiary record, that they had failed to establish the substantial likelihood of success on the merits required for issuance of a preliminary injunction.

Despite this Court's extensive reliance upon Craigmiles and the observation that it was controlling, Metro did not cite, let alone discuss, Craigmiles in its moving papers, relying primarily instead on the Eleventh Circuit's decision in Executive Town & Country Serv. v. City of Atlanta, 789 F.2d 1523 (11th Cir. 1096), which upheld a minimum fare requirement for limousines operating to and from Atlanta's Hartsfield International Airport. After discussing that case in a section captioned "The Eleventh Circuit Has Upheld A Minimum Fare Regulation For Limousines," Metro concludes

3

by arguing:

> Given the presumption of constitutionality attached to municipal ordinances, the highly deferential nature of the rational basis standard of review, the various governmental interests furthered by the Ordinance (as set forth in the Declarations of Brian McQuiston and Matthew Daus, the Metropolitan Government's Interrogatory Answers and as recognized by legislators in other jurisdictions with similar provisions), and the fact that at least one federal Court of Appeals has upheld a minimum fare ordinance relating to the regulation of limousines, the Metropolitan Government's motion for summary judgment should be granted.

(Docket No. 97 at 16).

Of course, Metro's reliance on <u>Executive Town</u> and failure to address <u>Craigmiles</u> in its opening brief is not, as Plaintiffs suggest, fatal. It is however telling in light of the different treatment the rational basis arguments received in those cases.

At issue in <u>Craigmiles</u> was a portion of the Tennessee Funeral Directors and Embalmers Act, Tenn. Code Ann. § 62-5-101(a)(3), which required that those selling caskets in Tennessee be licensed funeral directors. After making the observations (excerpted previously) about how the standards for acceptance of a regulatory scheme under the rational basis test are far from daunting, the Sixth Circuit went into detail discussing each of the supposed reasons for the casket regulations, and why those reasons did not, in fact, bear any legitimate purpose, other than protecting the economic interests of licensed funeral directors. It did so on the basis of a full record after trial.

In contrast, the Eleventh Circuit in <u>Executive Town</u> barely addressed plaintiffs' Fourteenth Amendment challenge, focusing instead on the Commerce Clause claim. Even so, in rejecting the due process challenge, the court stated that "[t]he city's reasons for legislating these minimum fare regulations are not very compelling in a free market system," and that the "regulations pass[] the 'rational basis' test, albeit with little room for comfort." <u>Executive Town</u>, 789 F.2d at 1528. This case, too, was decided after a trial on the merits.

4

There may be any number of reasons for the differing treatment of the stated legislative rationales in Craigmiles and Executive Town, but it is of signal note that the Sixth Circuit in Craigmiles specifically held that "Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." Craigmiles, 312 F.3d at 224 (collecting cases). In fact, the Sixth Circuit framed the issue before it as being "whether requiring those who sell funeral merchandise to be licensed funeral directors bears a rational relationship to any legitimate purpose other than protecting the economic interests of licensed funeral directors." Id. at 225. Finding that the proffered justifications were "nothing more than attempt to prevent competition," the Sixth Circuit concluded:

> . . . No sophisticated economic analysis is required to see the pretextual nature of the state's proffered explanations for the 1972 amendment. We are not imposing our view of a well-functioning market on the people of Tennessee. Instead, we invalidate only the General Assembly's naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers. This measure to privilege certain businessmen over others at the expense of consumers is not animated by a legitimate governmental purpose and cannot survive even rational basis review.

Id. at 229.

Craigmiles has not been met with universal approval. For example, the Tenth Circuit in Powers v. Harris, 379 F.3d 1208, 1218 (10th Cir. 2004) (citation omitted) noted that "[b]y our count, only three courts have held, in the absence of a violation of a specific constitutional provision or a valid federal statute, that 'protecting a discrete interest group from economic competition is not a legitimate governmental purpose,'" and cited for that proposition Craigmiles and two district court cases. The court in Powers chose to "part company with the Sixth Circuit's Craigmiles decision," because "Craigmiles' analysis focused heavily on the court's perception of the actual motives of the Tennessee legislature," and because its holding that economic protectionism was not a legitimate governmental interest was "unsupportable." Craigmiles, 312 F.3d at 224.

Just recently, the Fifth Circuit attempted to reconcile Craigmiles and Powers by stating that they may be said to "rest on their different implicit answers to the question of whether the state legislation was supportable by rational basis." St. Joseph Abbey v. Castille, ___ F.3d ___, ___, 2012 WL 5207465 at *4 (5th Cir. Oct. 23, 2012). Ultimately, however, the Fifth Circuit held that "neither precedent nor broader principles suggest that mere economic protection of a pet industry is a legitimate governmental purpose, but economic protection, that is favoritism, may well be supported by a *post hoc* perceived rationale . . . without which it is aptly described as a naked transfer of wealth." Id.

Metro's underlying premise that invalidation of a regulation is only appropriate upon a showing "that: 1) not a single legitimate plausible rational reason exists for the regulation, and 2) the regulation exists only to protect the economic interest of a single group" (Docket No. 106 at 1), is supported by both Castille and Jordan. But, as has already been explained, Craigmiles is controlling, as is its holding that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." Craigmiles, 312 F.3d at 224; see Merrifield v. Lockyer, 547 F.3d 978, 991 n. 15 (9th Cir. 2008) (rejecting Jordan in favor of Craigmiles, concluding that "mere economic protectionism . . . is irrational with respect to determining if a classification survives rational basis review," recognizing "that there might be instances when economic protectionism might be related to a legitimate governmental interest and survive rational basis review," but noting that "economic protectionism for its own sake, regardless of its relation to the common good, cannot be said to be in furtherance of a legitimate governmental interest").

## II.

Economic protectionism is a key aspect of Plaintiffs' case, with their position being that the

Ordinance was passed, not to advance any legitimate goals that would benefit Nashville or its citizenry, but rather to protect the "high-end" limousine services against whom they compete. Plaintiffs point to the following in their additional statements of fact as suggesting protectionism:

▸ A $50 minimum fare was first proposed to Brian McQuistion, the director of the Metropolitan Transportation Licensing Commission (MTLC), by the Tennessee Livery Association.

▸ The Tennessee Livery Association is a trade group that formed in 2009. The Association is made up of expensive limousine companies. It was instrumental in getting the Ordinance passed into law.

▸ The Tennessee Livery Association recommended a minimum fare to the director of the MTLC because the association wanted protection from competition in the livery industry and wanted to create barriers to entry into the industry.

▸ The MTLC removed the minimum fare from the draft regulations that it submitted to the Metropolitan County Council (Metro Council), replacing it with a provision that would have allowed the MTLC to set a minimum rate by rule.

▸ The Metro Council added the $50 minimum fare back into draft regulations, later reducing it to $45.

▸ The Tennessee Livery Association met with representatives of Gaylord Opryland in June 2010. At this meeting, both parties agreed to propose an amendment to the draft regulations that would remove a proposed 15-minute minimum prearrangement time for livery vehicles and reduce the $50 minimum fare to $45.

▸ Metro Councilmember Bo Mitchell received the specific language for his proposed Amendment 3 to the draft regulations from the Tennessee Livery Association and Gaylord Opryland.

▸ Mr. McQuistion has argued that to succeed in prosecuting providers of livery service that supply on-demand and cruising services in competition with taxis, Nashville must impose either a minimum prearrangement time on livery vehicles or a $45 per trip minimum fare. Mr. McQuistion recommended the minimum prearrangement time to the Metro Council, instead of the minimum fare, but the Metro Council disregarded Mr. McQuistion's recommendation.

(Docket No. 103 at 42-34, ¶¶ 80-87, internal citations to the record omitted). While Metro disputes some of those facts (and what those facts really mean), it will be for the jury to determine the facts,

7

whether those facts and the inferences to be derived therefrom suggest pure economic protectionism, and whether Metro's stated reasons for the enactment of the Ordinance are legitimate.

In arriving at this conclusion, the Court acknowledges Metro's assertion that there has been no showing of the passing of any bribes, or unlawful activities by city council members in relation to the enactment of the Ordinance. However, the Sixth Circuit in Craigmiles invalidated, on economic protectionism ground, a state law without once mentioning any such nefarious conduct.

The Court also acknowledges Metro's argument that preliminary injunctive relief was denied, notwithstanding the Court's recognition of "Plaintiffs' position that the insertion of a minimum fare provision was done to favor the TLA, an organization which is said to represent the high-end limousine companies." Bokhari, 2012 WL 1165907 at *7. But that observation was made "[g]iven the limited evidence in the record," id. at *8, and saying that Plaintiffs have failed to established entitlement to the "extraordinary remedy" of preliminary injunctive relief, Winter v. Nat'l Resources Defense Council, Inc., 555 U.S. 7, 22 (2008), is not the same as saying Metro has establish the absence of a material issue of fact and its entitlement to judgment as a matter of law.

Moreover, Metro grudgingly concedes that the record has changed and there is now "new evidence . . . that Gaylord and the Tennessee Livery Association proposed the amended language that set the rate of $45, eliminated a pre-arrangement time limit, and removed the exception from the pre-arrangement requirement for hotels with their own liveries." (Docket No. 106 at 4). If, as this Court remarked in denying injunctive relief, "the near wholesale use of TLA's draft legislation seems a bit fishy," Bokhari, 2012 WL 1165907 at *8, then this "new evidence" only adds to the level of pungency, and it will be for the jury to determine whether enactment of the ordinance passes the "smell test." See Craigmiles, 312 F.3d at 225 (citation omitted) ("Tennessee's justifications for the 1972 amendment come close to striking us with 'the force of a five-week-old, unrefrigerated dead

8

fish,' a level of pungence almost required to invalidate a statute under rational basis review").

### III.

In support of its proffered legitimate governmental interest in enacting the Ordinance, Metro relies upon the expert testimony of Matthew W. Daus, an attorney. He opines about a number of things, including the need for a minimum fare, pre-arrangement, dispatching, and vehicle age and mileage restrictions. Plaintiffs have filed a motion to strike his testimony "from the summary judgment record" (Docket No. 101 at 1),[3] arguing that his "testimony is not expert analysis; it is legal analysis"; he "performed no investigation into the facts of this case"; and he "used an unreliable methodology to investigate the laws of other jurisdictions." (Docket No. 102 at 1). The Motion to Strike will be denied for two reasons.

First, the Court is denying Metro's motion for summary judgment, even with its reliance upon Daus' testimony.[4] Second, Metro's response to Plaintiffs' motion to strike Daus' evidence only undercuts its reliance on his opinion in moving for summary judgment.

Metro argues that the alleged inaccuracies in Mr. Daus' opinions "go[es] to the weight to be given to [the] evidence rather than its admissibility," observes that "Rule 702 does not prohibit the

---

[3] Plaintiffs also ask the Court to ignore Metro's answers to Plaintiffs' First Set of Interrogatories Numbers 5 & 7, which asked Metro to identify the legitimate governmental interests advanced by the dispatch restrictions and the vehicle age requirements in the Ordinance. Plaintiffs argue that a party may not rely upon its own interrogatory responses to support a motion for summary judgment.
   However, "[u]nder Federal Rule of Civil Procedure 56(c), a district court 'may consider answers to interrogatories when reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial,'" and this includes a party's own responses to interrogatories. Johnson v. Holder, ___ F.3d ___, ___, 2012 WL 5457517 at *2 (7th Cir. Nov. 9, 2012) (citation omitted). Regardless, this is a non-issue since, notwithstanding Metro's responses, the Court will deny summary judgment.

[4] The extent to which Daus may or may not be permitted to testify at trial is another matter, and Plaintiffs have filed a Motion in Limine to exclude his testimony (Docket No. 115). This Motion will be addressed either at the pretrial conference or at trial.

9

use of experts to educate the finder of fact," contends that "[h]is expertise is intended to assist the trier of fact," argues that "the challenges posed to Mr. Daus's methodology and the foundation for his opinions are properly directed to the fact finders' role to determine the weight to be given to the evidence," and claims that his "expertise is 'helpful' to the trier of fact." (Docket No. 113 at 1, 3, 5, 7 & 10). Of course, "at the summary judgment stage the judge's function is not himself to weigh the evidence," Anderson, 477 U.S. at 249, nor can he "'judge the evidence and make findings of fact.'" Upshaw v Ford Motor Co., 576 F.3d 576, 592 (6th Cir. 2009) (citation omitted).

## IV.

"The rational basis test requires the court to ensure that the government has employed rational means to further its legitimate interest," and "rational basis review, while deferential, is not toothless." People Rights Org., Inc. v. City of Columbus, 152 F.3d 522, 532 (6th Cir. 1998). Because Plaintiffs have presented sufficient evidence to raise a question of fact as to whether passage of the Ordinance furthered a legitimate governmental interest rather than mere economic protectionism, Metro's Motion for Summary Judgment will be denied. Plaintiffs' Motion to Strike Mr. Daus' testimony will also be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE